OPINION
Defendant, Jacqueline M. Cohoon, appeals from a judgment and decree of divorce terminating her marriage to Plaintiff, Joe E. Cohoon.
The parties were married on September 12, 1978. Three children, all of whom are yet in their minority, were born as issue of the marriage.
Jacqueline[1] was not employed outside the home during the sixteen years the parties were married. Joe was gainfully employed. During the year preceding the divorce decree, Joe's gross income amounted to $117,000. It was slightly less the previous year due to a difference in the commissions he realized. The trial court found that Jacquelyn is capable of earning an income of $10,000 per year.
Both parties abused alcohol and used cocaine during the marriage. Joe obtained the cocaine for their use. Jacquelyn's behavior was more seriously affected by these abuses. As a consequence of her erratic behavior, custody of their three minor children was awarded to Joe.
Jacquelyn has moved to Tennessee, where she currently resides with her mother. A trust has been established to hold and distribute Jacquelyn's assets and her income from spousal support that Joe pays. Jacquelyn's sole capital asset is $28,500 remaining from her one-half interest in Joe's 401K retirement account. The court had distributed $11,000 from her share along with Jacquelyn's $20,000 share of the equity in the marital home to Joe in order to pay marital debts he was ordered to bear.
In fashioning its decree, the trial court determined the parties' respective child support obligations, divided their marital assets and liabilities, and ordered spousal support. More specifically, it ordered Joe to pay Jacquelyn spousal support in the amount of $600 per month for a period of seven years.
Jacquelyn filed a timely notice of appeal, and now assigns three errors for our review.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN GRANTING THE APPELLANT WIFE SIX HUNDRED DOLLARS ($600) PER MONTH IN SPOUSAL SUPPORT WHEN THE APPELLEE HUSBAND HAS AN INCOME OF ONE HUNDRED SEVENTEEN THOUSAND DOLLARS ($117,000) A YEAR.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN FAILING TO ADEQUATELY STATE HOW IT ARRIVED AT A SPOUSAL SUPPORT AWARD OF $600 A MONTH WHEN THE APPELLEE EARNED $117,000.
Jacquelyn argues that, in view of the low amount of her potential income, $10,000 per year, and Joe's substantial income, approximately $117,000 during the year preceding their divorce, and the duration of their marriage, the trial court abused its discretion when it awarded her only $600 per month in spousal support.
Jacquelyn had testified that, at a minimum, she required $2,000 per month for her needs. Assuming a $10,000 annual earned income potential, which she does not dispute, this leaves Jacquelyn a deficit of $6,800 annually, or $8,600 if her $150 monthly child support obligation is counted.
"The term `abuse of discretion' connotes more than an error of law a judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
In ordering spousal support, after it has divided the parties' marital and separate properties, the court is required to consider the "factors" set out in R.C. 3105.18(C) as they may apply to the parties involved. The trial court did that, though its expressed findings do not demonstrate how it concluded that $600 per month in spousal support was just or reasonable in view of the evidence involved. That omission does not render the judgment defective, however, if the record demonstrates that the support the court ordered is just and reasonable. To satisfy that requirement, the evidence must demonstrate a reasonable equivalence between the need of one spouse for spousal support and the ability of the other spouse to pay it. Fletcher v. Fletcher
(August 24, 1992), Montgomery App. No. 12942, unreported, reversed on other grounds, 68 Ohio St.3d 464.
It seems beyond question that Jacquelyn has a need for more spousal support than the trial court ordered. The critical question, therefore, is whether Joe has the ability to pay more support, in an amount equivalent to Jacquelyn's unmet needs. We are not prepared to find that he does merely because of the level of his income, at least without regard to the other expenses he is required to bear for himself and his three children.
The trial court appears to have concluded that, considering the expenses Joe is required to pay, $600 per month is at or near the maximum in support that he can afford. We believe that the conclusion is incorrect, because of several calculational mistakes that the court made concerning the amount of that debt and the resources made available to Joe to pay them.
The court found that the parties owed a debt to Universal Collection Systems in the amount of $8,110. At trial, Joe testified that the amount of the debt was $810. (T. 14). Joint Exhibit III reflects that it is $810. Therefore, the amount of the marital debt assigned to Joe is overstated by $7,300.
In order to pay the entire marital debts that he was assigned, which the court found amounted to $61,820, the court distributed $30,910 of Jacquelyn's share of the marital assets to Joe, representing her $20,000 half share in the equity in the marital residence and $11,000 from her half-share of Joe's 401K retirement plan. These transfers reduced Joe's net debt obligation to $30,270, or $22,970 if the error in the amount owed Universal Collection Systems is corrected. However, when it calculated spousal support, the court appears to have found that Joe will be required to pay the entire $61,820, not the diminished amount resulting from the application of Jacquelyn's property to pay a part of those debts.
By overstating Joe's debt burden as it did, the court artificially diminished Joe's ability to pay a greater amount of spousal support from his regular income. Of course, that view assumes that Joe will apply the $20,000 equity in the marital residence and the $11,000 share in the 401K retirement plan that the court distributed to him from Jacquelyn's separate property for that purpose. Joe will likely experience some cost in doing so. However, it would undermine and defeat the purpose of the distribution to assume that he will not apply those assets to reduce the marital debt obligations he was ordered to pay.
Joe testified that his child care expenses would be approximately $11,000 per year, plus a one-time expense of $4,000 to furnish a room for the use of a care-provider. The trial court calculated, however, that Joe would be required to spend $18,000 for child care. This amount was in addition to his share of the child support expenses, which the court found was $21,600. The court then took Joe's outlay for child care into consideration when it determined his ability to pay spousal support.
In determining the amount of spousal support, the court is required to consider the parties' respective obligations pursuant to court order. R.C. 3105.18(C)(1)(i). Child support is one of those obligations. In calculating child support, the court is required to include child care expenses: R.C. 3113.21.5, Child Support Worksheet, Line 18.
The court did not include Joe's child care expenses when it calculated the parties' child support obligations. That may make little difference with respect to spousal support, as Joe will bear the greater part of the cost of the children's needs, including child care expenses. However, those costs should be included in the child support calculations, per the Worksheet.
At oral argument, Jacquelyn argued that the amount of spousal support that the court ordered Joe to pay is grossly low in relation to the informal rule of thumb that the domestic relations court follows with respect to the incomes of the parties. That may be, but informal rules create no rights in law, and courts do not abuse their discretion in failing to apply them. In this instance, the court was probably concerned with Jacquelyn's history of dissipating assets to satisfy her drug habit, which may very well include whatever spousal support she receives. That is a legitimate concern.
Nevertheless, the errors in the basis on which the trial court calculated Joe's spousal support obligation overcome the presumption of regularity that applies to trial court proceedings. Therefore, we will reverse that portion of the judgment and decree of divorce that pertains to spousal support and remand the matter for further proceedings to determine the proper amount of spousal support that Joe should pay.
The first and second assignments of error are sustained.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN ALLOCATING TWO THOUSAND DOLLARS ($2,000) IN ATTORNEY FEES TO THE APPELLANT WIFE WITHOUT AN EVIDENTIARY HEARING ON THE ACTUAL COST OF HER LEGAL FEES.
The trial court ordered Joe to pay $2,000 of Jacquelyn's attorney fees. The order was entered without a hearing on the question. Jacquelyn argues that, in view of the length and duration of the divorce litigation, a greater amount is justified.
A domestic relations court may order reasonable attorney fees in divorce proceedings. R.C. 3105.18(H). What is "reasonable" involves questions of fact. Jacquelyn presented no evidence concerning what her attorney fees were, perhaps expecting to litigate that issue after a decree had been entered. In any event, we believe that both parties are entitled to a hearing on the issue, as the amount ordered is greater than a nominal sum.
The third assignment of error is sustained.
 Conclusion
Having sustained the assignments of error presented, we will reverse those portions of the trial court's judgment and decree of divorce that concern spousal support and attorney fees and will remand those issues to the trial court for further proceedings. Otherwise, the judgment and decree will be affirmed.
WOLFF, J. and FAIN, J., concur.
[1] For purposes of clarity and economy, the parties will be identified by their first names.